IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIM TONIO,                                              )
                                                       )
                        Plaintiff,                     )
                                                       )
            v.                                         )        Civil Action No. 04-606
                                                       )        Judge Joy Flowers Conti
THE COMMUNITY COLLEGE                                  )        Magistrate Judge Lisa Pupo Lenihan
OF BEAVER COUNTY,                                      )
                                                       )
                        Defendant.                     )

## REPORT AND RECOMMENDATION

## I.  RECOMMENDATION

It is respectfully recommended that the Defendant's Motion for Summary Judgment be granted.

## II.  REPORT

This case involves claims related to Defendant's alleged discriminatory termination of Plaintiff, Kim Tonio ("Tonio"), in response to Tonio's request for accommodation of his bipolar disorder in accordance with the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*  and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*[1] This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

---

1.  Plaintiff has now stipulated to his inability to maintain a cause of action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  See Plaintiff's Brief in Opposition at 6, n. 1.

Because a reasonable jury could not find, on the basis of the record evidence, that Tonio is "disabled" within the meaning of the ADA, *i.e.*, that he suffers a "substantial limitation" on a major life activity, Defendant's Motion for Summary Judgment should be granted.

## A.  **Statement of Facts and Procedural History**

This case was initially framed as a civil action for relief in consequence of Defendant's alleged discriminatory transfer and subsequent termination of Plaintiff in response to his request for accommodation under the ADA.[2]

Plaintiff was employed by Defendant,  The Community College of Beaver County, ("Community College") as the Director of its Learning Center.  The position of Director of the Learning Center is a fully-funded position within the College.  In May, 2002, Plaintiff requested accommodation for his bipolar disorder.[3]  In July of that year he was reassigned to the position of Act 101 Coordinator.  This position is a grant-funded position, *i.e.*, one which is retained subject to the continued availability of funding.[4]  Later that month, Defendant requested permission to consult with Plaintiff's physician regarding his needs for accommodation and, in October, 2002,

---

2.  The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability . . . in regard to . . . advancement, or discharge of employees, . . . and other terms, conditions and privileges of employment."  42 U.S.C. § 12112(a).  A "qualified individual with a disability" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  Id. at § 12111(8).  Disability claims under the PHRA are considered under the same analysis as are cases under the ADA.  See, *e.g.*, Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

3.  The Charge of Discrimination filed by Plaintiff with the EEOC and attached as Exhibit A to his Complaint suggests that this was not Plaintiff's first request for accommodation.  See Complaint, Exhibit A (asserting that, at the time of transfer, Defendant contended to Plaintiff that "it had provided [him] with numerous accommodations in the past").

4.  See Complaint at ¶9.

2

Defendant advised Plaintiff that the Coordinator position to which he had been transferred satisfied Plaintiff's necessary accommodation.  Plaintiff was terminated by the Defendant on June 5, 2003, assertedly owing to a lack of continued funding for the Act 101 Coordinator position to which he had been reassigned.[5]

On October 23, 2003, Plaintiff filed his Charge with the EEOC and his Right to Sue Notice was issued on January 22, 2004.  The Complaint in this action was timely filed on April 21, 2004.  Plaintiff alleged claims under the ADA, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the PHRA.

**B.   Motion for Summary Judgment**

Summary judgment is to be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

All doubts as to the existence of a genuine issue of material fact are resolved against the moving party, and the entire record is examined in the light most favorable to the nonmoving party.  Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982).  However, the

---

5.  Defendant asserts that, at that time, it eliminated numerous positions and held others vacant because of funding limitations and increasing health insurance costs.  It further testifies that it would have been required to provide approximately $22,000-$25,000 in matching funds had it attempted to retain the Act 101 Coordinator position.  See Defendant's Reply Brief at 6.

nonmoving party "must present affirmative evidence in order to defeat a properly supported

motion for summary judgment." Anderson, 477 U.S. at 257.  Rule 56 requires the entry of

summary judgment if, after adequate time for discovery, a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

### C. **Analysis**

#### 1. **Discriminatory Transfer**

In its earlier Motion to Dismiss, Defendant maintained that Plaintiff's initial claims for

allegedly discriminatory transfer, which transfer occurred on July 1, 2002, were time-barred

because Plaintiff's Equal Employment Opportunity Commission ("EEOC") Charge of

Discrimination (the "Charge") was not filed within 300 days as required. [6]  Plaintiff responded

that he was entitled to continue to assert a cause of action as to the transfer because it was part of

a "continuing violation".[7]  This Court held that Plaintiff's claim for discriminatory transfer or

reassignment would be time-barred if he knew or should have known at the time of transfer that

Defendant's action represented a discrete unlawful act  - i.e., a demotion or transfer to a lesser

---

6.  Plaintiffs seeking relief under the ADA must exhaust administrative remedies by filing charges with the EEOC within 180 days after the alleged unlawful practice, or within 300 days if proceedings were initially instituted with a state or local agency.  See 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a) (incorporating § 2000e-5 into the ADA's enforcement provisions).

Under the PHRA, a charge of discrimination must be filed within 180 days of the act complained of.  See 43 Pa. C.S.A. § 959(h); Vincent v. Fuller Co., 616 A.2d 969, 974 (Pa. 1992).

7.  See Zipes v. Trans World Airlines, Inc., 455 U.S. 386, 393 (1982).  If a plaintiff demonstrates a continuing violation,  he may recover for the entire violation and offer evidence of all related events, including those falling outside the 300 day filing period.  If not,  he may recover only for conduct within the statutory period.

position which he should have understood to have continuing adverse consequences[8] - but that it was not entirely clear from the pleadings that Plaintiff had or should have had such knowledge.[9] Defendant's Motion to Dismiss was therefore denied.

Following the completion of discovery in this case, Tonio has apparently abandoned any ADA claim based on his transfer to the Act 101 position, and now rests his claim solely upon his termination from the Act 101 position in June, 2003.   See Plaintiff's Brief in Opposition at 6 ("Tonio argues that the filing of his administrative complaint . . . occurred within 300 days of the only actionable discriminatory act, Tonio's June 3, 2003 termination . . . .");  Plaintiff's Response to Reply Brief at 6-8.  This Court first observes - for clarity's sake - that Plaintiff may not maintain an age discrimination claim on the basis of his July, 2002 transfer, as such claim is clearly time-barred.

More specifically, the record now indicates that in late April, 2002, after transfer was proposed to him, Tonio investigated the status of the Act 101 position, understood that it was a grant-funded position, understood the import of that difference between the Act 101 position and his position as Director, and expressly requested that he not be transferred for those reasons.  See Plaintiff's Brief in Opposition at 4 ("Following his inquiries concerning the status of the position of Coordinator . . . Tonio formally requested that he remain in his current position . . . with

---

8.  See Report and Recommendation (explaining that "[t]he courts look to whether the alleged action should have triggered 'an employee's awareness of and duty to assert his or her rights' and whether 'the consequences of the act would continue even in the absence of a continuing intent to discriminate'" ) (citations omitted).

9.  See Plaintiff's Brief in Opposition to Motion to Dismiss at 3 (asserting that, prior to his termination, Plaintiff "neither knew nor had any reason to know" his employer was discriminating against him and that his reassignment was a "lateral transfer" that did not constitute a "demotion").

accomodations . . . ."); Appendix to Plaintiff's Brief in Opposition at 15 (April 30, 2002

Memorandum from Tonio to Defendant's Director of Human Resources, expressing concerns

regarding the "funding stream" for the Coordinator position and possible elimination of the

position); see also id. (handwritten notes on memorandum, notating Defendant's discussion with

Plaintiff on May 16, 2002, including that "position was conditional upon grant funding" and

"there are no certainties").  Although Tonio attempts to make much of the absence of any

reduction in his salary at that time,[10] it is nonetheless apparent that he understood that transfer to

the Coordinator position constituted an adverse change in employment status and that this

transfer, which he asserts he believed at the time to have been made for discriminatory reasons,

would place him at increased risk of finance-related termination.[11]  Because Tonio was placed on

notice of Defendant's potentially-actionable employment practice no later than July, 2002, the

applicable 300-day statute of limitations on his transfer expired prior to October, 2003.[12]

---

10.  See, *e.g.*, Plaintiff's Brief in Opposition at 5, 8.

11.  See Sabree v. United Bhd. of Carpenters & Joiners Local No. 33, 921 F.2d 396, 402 (1st Cir.
1990) ("A knowing plaintiff has an obligation to file promptly or lose his claim . . . [as]
distinguished from a plaintiff who is unable to appreciate that he is being discriminated against
until he has lived through a series of acts and is thereby able to perceive the overall
discriminatory pattern."); Stewart v. CPC International, Inc., 670 F.2d 117, 120 (7th Cir. 1982)
(*per curiam*) (holding that violation of Title VII occurs and triggers time limit for filing charge
"when the employee knew or should have know that he or she was discriminated against") (citing
Ricks, 449 U.S. 250)).

12.  See McCarron v. British Telecom, 2002 WL 1832843, *10-11 (E.D. Pa. Aug. 7, 2002)
(rejecting continuing violation theory and concluding claims time-barred where plaintiff alleged
discriminatory transfers to "lower level positions" outside 300-day period); Brethwaite v.
Cincinnati Milacron Marketing Co., 1995 WL 29030, *2 (E.D. Pa. Jan. 26, 1995) (granting
motion to dismiss as to time-barred age discrimination claims, including claim related to transfer
from Regional Manager to National Accounts Manager outside statutory period).  Cf. Morgan,
536 U.S. at 114 (explaining that each adverse employment decision constitutes a separate
(continued...)

_____**2.  Discriminatory Termination from Act 101 Position**

_____To establish a *prima facie* case of unlawful discrimination under the ADA, a plaintiff

must establish that (1) he has a disability within the meaning of the ADA; (2) he is "otherwise

qualified" to perform the essential functions of the job, with or without reasonable

accommodation; and (3) he has suffered an adverse employment action as a result of his

disability.  See Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).  This Court need go no

further than to note that Plaintiff has not established a genuine issue for trial as to the first

element.

As Defendant has ably briefed, "disablity" for purposes of the ADA is a physical or

mental impairment that effects a "substantial limitation" on one or more of the major life

activities of such individual.  42 U.S.C. § 12102(2).[13]  "Major life activities" refers to those that

are of central importance to daily life.  See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534

U.S. 184, 197 (2002).[14]  In order to be properly characterized as disabled because of a substantial

limitation on the life activity of working, a plaintiff must be unable "to perform either a class of

jobs or a broad range of jobs in various classes as compared to the average person having

comparable training, skills and abilities."  29 C.F.R. § 1630.2(j)(3)(i); Marinelli v. City of Erie,

_____

12.  (...continued)
actionable unlawful employment practice and must be complained about within the statutory
period).

13.  Disability also encompasses a record of such impairment or being regarded as having such
an impairment.  Id.

14.  See also 29 C.F.R. § 1630.2(i) (providing examples of "caring for oneself, performing
manual tasks, walking, seeing, hearing, speaking, breathing, learning and working").

Pa., 216 F.3d 354, 364 (3d Cir. 2000).[15]   Similarly, in order to be properly characterized as

disabled because of a substantial limitation in such general cognitive activities as thinking,

learning, concentrating and/or remembering, an employee must suffer a more than moderate

reduction in these abilities.  Collins v. Prudential Investment and Retirement Services, 119

Fed.Appx. 371 (3d Cir. 2005) (concluding that proper standard is whether such activities are

"precluded or severely restricted or limited" and that moderate impairment does not suffice)

(citing Toyota Motor (explaining that "substantially limiting" impairment is one that "prevents or

severely restricts" the major life activities)).[16]   More broadly, the Circuit Court has "glean[ed]

two general propositions from [its prior] opinions: (1) courts must adjudicate ADA claims on a

case-by-case basis; and (2) [the Circuit has] held only *extremely limiting* disabilities - in either

the short or long-term - to qualify for protected status under the ADA."  Marinelli, 216 F.3d at

362.

　　　　The Courts have taken care to note that the qualifications for protection under the

auspices of the ADA are not intended to be uncharitable toward, and do not reflect a lack of

sympathy for, individuals with lesser disabilities.  They are, however, necessary to the purposes

of the Act, *i.e.*, to shield from adverse employment actions those individuals whose medical

---

15.  An inability to perform one or "two very specific jobs at a specific company" is insufficient
to meet the requirements of the EEOC regulations. Caracciolo v. Bell Atlantic-Pennsylvania,
Inc., 135 Fed.Appx. 503, 505 (3d Cir. 2005).  Rather, "[b]oth the EEOC and the courts . . . have
required a plaintiff to show that his or her impairment prevents them from engaging in a category
of jobs."  Marinelli, 216 F.3d at 364 & n.6 (citing 29 C.F.R. § 1630.2(j) (observing that list of
restrictions that physician had placed on plaintiff's work did not indicate a class of jobs from
which he was disqualified as a result of his impairment)).

16.  In this case, Plaintiff alleges limitations in his ability to perform in front of groups, quickly
learn new information and learn large tasks.  See Plaintiff's Brief in Opposition at 5.

difficulties substantially prevent them from engaging in significant daily activities.. See Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 724 (8th Cir. 2002) (concluding that moderate limitations do not constitute disabilities under the ADA and that "[t]o hold otherwise could expand the ADA to recognize almost every working American as disabled to some degree"); Taylor v. Pathmark Stores, Inc., 177 F.3d 180 (3d Cir. 1999) (stating that "the purpose of the ADA would be undermined if protection could be claimed by those whose relative severity of impairment was widely shared").

Plaintiff correctly asserts that he need not "prove" his disability to survive a motion for summary judgment.[17]  He further asserts, however, that (a) his condition is, by definition, a disability;[18] and (b) an August 15, 2002, letter from his treating physician, Dr. Altman, together with his self-reporting of his condition, are sufficient evidence on which to proceed to trial.[19]

First, to the extent Plaintiff is claiming that a particular condition may be a disability *per se*, such position has been expressly rejected by the United States Supreme Court.  See Williams, 534 U.S. at 195 (noting that "[m]erely having an impairment does not make one disabled for

---

17.  See Plaintiff's Response to Reply Brief at 2.

18.  See Plaintiff Brief in Opposition at 6 ("Tonio also argues that his bi-polar condition is by definition a disability under the ADA, and that summary judgment is not the appropriate procedural time in which to challenge whether Tonio has sufficiently proven his disability."); id. at 11.

19.  See Plaintiff's Brief in Opposition at 11 (asserting that the "report of Altamn [sic] combined with Tonio's own testimony sufficiently demonstrates that he has a mental impairment that substantially limits major life activities"); Plaintiff's Response to Reply Brief at 3-4.  Tonio testified that his condition causes anxiety and depression, difficulty sleeping and getting up in the morning, and that his medication sometimes causes memory loss.  See Deposition at 17-18.  He also alleges irritability,  phobia in social environments, impairments in concentration and attention, mood swings, and physical and mental fatigue.  See Complaint at 2; Plaintiff's Response to Concise Statement of Material Facts at ¶¶ 8-9.

purposes of the ADA"); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999) (holding that "whether a person has a disability under the ADA is an individualized inquiry"); Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999)("No one disputes that bipolar disorder counts as a mental impairment under the ADA; the contested issue is whether [plaintiff's] impairment substantially limits a major life activity . . . .").[20]

Second, as Plaintiff acknowledges, the question presently before this Court is whether he has presented evidence sufficient to allow a reasonable jury to find him disabled within the scope of the ADA.  But Plaintiff , in a lengthy *non sequitur*, cites a Fifth Circuit case, Taylor v. Principal Financial Group, 93 F.3d 155 (5th Cir. 1996), for the proposition that once an employee has alleged specific limitations on his ability to perform a particular job, any subsequent discrimination claim must proceed to trial.  See Plaintiff's Response to Reply Brief  at 5.  In Taylor, the Fifth Circuit addressed the "discrimination" aspect of an ADA case and instructed, sensibly, that an employee has not raised a genuine question of discriminatory motive where the employer had no knowledge of the employee's alleged limitations.  That is, it addressed the question of what knowledge on the part of the employer is required to show discriminatory animus.  That question is entirely separate and apart from, and cannot stand in place of, what evidence an employee must present that his alleged "disability" is of a nature and degree within the scope of the Act.

---

20.  See, *e.g.*, Doebele v. Sprint/United Mangement Co., 342 F.3d 1117 (10th Cir. 2003) (affirming in part summary judgment for employer where employee diagnosed with depression, bipolar disorder, and attention deficit disorder failed to present evidence that impairments substantially limited major life activities); Hoeller v. Eaton Corp., 149 F.3d 621 (7th Cir. 1998) (affirming summary judgment where employee failed to evidence that bipolar disorder limited him substantially in any major life activity).

Plaintiff was correct in his belief that <u>Taylor</u> provides important guidance; the relevant case, however, is <u>Taylor v. Phoenixville School District</u>, 184 F.3d 296 (3d Cir. 1999).  In *this* <u>Taylor</u>, the Third Circuit considered whether a plaintiff with a bipolar disorder suffered a "substantial limitation" on a major life activity as required under the Act.  It concluded that a delusional plaintiff's disavowal of her condition was not enough to override medical records - including psychiatric hospitalizations - reflecting her serious disability.  In so holding, the Third Circuit spoke to what it considered a sufficient impact on a plaintiff's thinking, most pointedly noting plaintiff's psychiatric history of intense paranoid delusions; her continuing paranoia and need for frequent (*e.g.*, approximately 25 visits per annum) mental health treatment; and her additional drug-related symptoms, including nausea.  In <u>Taylor</u>, the Circuit Court concluded that a "serious, very much ongoing condition" raises a triable question of disability where chronic, repeated flare-ups of mental disability could "have a cumulative weight that [would] wear[] down . . . resolve and continually break[] apart longer-term projects."   <u>Compare</u> <u>Sever v. Henderson</u>, 2005 WL 1940786, __ F.Supp.2d ___ (M.D. Pa. Aug. 10, 2005) at *11 (discussing <u>Taylor</u> and noting, "by way of contrast" that case before Court in <u>Sever</u> "presented no evidence of a pattern of bizarre behavior" or preceeding hospitalizations).

Tonio's evidence does not begin to establish the kind of limitations evident in cases in which the Courts have concluded that a Plaintiff presented evidence from which a reasonable jury could find "substantial limitation."  To the contrary, the August 15, 2002 letter from Dr. Altman *expressly* describes the severity of Tonio's condition as "mild to low moderate".  <u>See</u> Appendix to Plaintiff's Brief in Opposition at 24 (letter of August 15, 2002 indicating that Plaintiff suffered from chronic bipolar disorder since 1991, was maintained in a stable condition

11

on medications under Dr. Altman's treatment, and was expected to be seen in 2-3 months or as needed); id. (describing Plaintiff's condition as "mild to low moderate" in severity); id. at 25 (describing job limitations as "in the mild to moderate range"). See Sever, 2005 WL 1940786 (observing that it is insufficient for individuals attempting to prove disability status to merely submit evidence of medical diagnosis of impairment; claimant must prove disability by offering evidence that extent of limitation is substantial).  Nor do Dr. Altman's suggested accommodations indicate any substantial limitation.  See Appendix to Plaintiff's Brief in Opposition at 25 (letter of Dr. Altman requesting that Plaintiff be given lead-time for speech preparation, be permitted to tape record meetings, be given additional training time, and have large assignments divided into smaller goals). See Sever, 2005 WL 1940786 at *8 (noting that suggested accommodations did not indicate any substantial limitation and concluding that "[p]laintiff's own evidence . . . compel[led] the conclusion that [he] was not substantially limited in some major life activity").[21]  Nor does the record suggest chronically repeating episodes of

_____

21. For these same reasons, neither Dr. Altman's evaluation letter nor Plaintiff's testimony provide evidence in support of a finding that Plaintiff met the Act's disability requirements because he was precluded or significantly restricted from a broad range or substantial class of jobs.  Indeed, here again they suggest the contrary.

The Supreme Court has directed that an individual is not precluded from a "broad range" of jobs where a host of different types of jobs are available; nor is an individual precluded from a "substantial class" of jobs where jobs utilizing the individual's skills are available.  Sutton, 527 U.S. at 493.  See, e.g., Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751 (3d Cir. 2004) (concluding that police officer was not precluded from a broad range of jobs by his depression where he could have performed duties of bus driver, chauffeur, two truck operator, or worked for public transportation or rental car agency or in police radio room); id. (concluding that fact question of disability existed where evidence suggested officer was significantly restricted in ability to perform any of law enforcement class of jobs because he could no longer have access to firearms).  In Williams, the Circuit Court looked to whether jobs in which the plaintiff might utilize his training, knowledge, skills and abilities remained available.  See also

(continued...)

paranoia, work absences, or other mental-health related life activity impairments of a <u>Taylor</u> magnitude.  <u>See</u> Defendant's Brief in Support of Summary Judgment at 2-3, 11-13 (noting that in eleven years following diagnosis, Plaintiff experienced only one period during which he felt need to raise issue concerning aggravated condition's impact on job performance); Appendix to Plaintiff's Brief in Opposition at 24-25 (letter of Dr. Altman).

Finally,  Plaintiff's arguments that Defendant undertook no further medical inquiry, *e.g.*, that it did not contact Dr. Altman or seek additional medical opinion(s), are simply of no consequence.[22]  <u>See</u> <u>Sever</u>, 2005 WL 1948706 at *5 (noting, in granting summary judgment for defendant, that it had not submitted any psychiatric evidence on the summary judgment record, but had maintained that plaintiff's evidence was insufficient to create a genuine dispute of material fact on the question of whether plaintiff suffered from a mental impairment that substantially limited a major life activity at the time he was fired).[23]

---

21.  (...continued)
29 C.F.R. App. § 1630.2(j) (EEOC interpretive guideline stating that pilot with eye impairment disqualifying him from flying commercial aircraft but able to serve as co-pilot, or pilot other aircraft, is not disabled under the ADA).

In addition to performing first the Director's, and then the Coordinator's, job, Plaintiff has since been employed as a guidance counselor.  <u>See</u> Defendant's Appendix to Motion for Summary Judgment at 5.

22.  <u>See</u>, *e.g.*, Plaintiff's Brief in Opposition at 5; Plaintiff's Response to Reply Brief at 4 ("It is important to note that to this day [Defendant] has never contacted Dr. Altman.").

23.  Although it is not necessary to reach a holding on the additional elements of a *prima facie* claim, this Court notes that Plaintiff was also required to provide evidence sufficient to support a jury finding that he suffered an adverse employment action as a result of a disability.  Even if Plaintiff were disabled within the meaning of the Act, it does not appear that he has carried this burden.  Although Plaintiff has perhaps raised a fact question regarding his July 2002 transfer to the Act 101 position, as discussed above, that claim is time-barred.  And this Court, on the

(continued...)

III.  <u>CONCLUSION</u>

Owing to Plaintiff's failure to proffer sufficient evidence to support his claim of disability, as more fully set forth above, it is recommended that the Motion for Summary Judgment be granted.

In accordance with the Magistrates Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.


 /s/ Lisa Pupo Lenihan_____
LISA PUPO LENIHAN
United States Magistrate Judge


Dated: October 4, 2004

--------------------------

23.  (...continued)
evidence before it, would be inclined to hold that Plaintiff has failed to make a showing from which a reasonable jury might conclude that  his position was terminated for discriminatory, rather than economic, reasons.

cc:     The Honorable Joy Flowers Conti
        United States District Judge

        Albert A. Torrence, Esq.
        640 Fourth St.
        Fourth St. Professional Bldg.
        Beaver, PA  15009
        Counsel for Plaintiff

        Anthony G. Sanchez, Esq.
        Todd P. Prugar, Esq.
        Andrews & Price
        Suite 506
        1500 Ardmore Blvd.
        Pittsburgh, PA  15221
        Counsel for Defendant